## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## AUSTIN DIVISION

| | | |
|---|---|---|
| JAMES ROBERT MILLER, | § | |
|     Petitioner, | § | |
| | § | |
| V. | § | A-05-CV-969-LY |
| | § | |
| DOUG DRETKE, Director, Texas Dept. of | § | |
| Criminal Justice-Correctional | § | |
| Institutions Division, | § | |
|     Respondent. | § | |


## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

To:    The Honorable Lee Yeakel, United States District Judge

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates, as amended, effective December 1, 2002.

Before the Court are Petitioner's Application for Habeas Corpus under 28 U.S.C. § 2254 (Document 1); Respondent's Answer (Document 11); and Petitioner's response thereto (Document 12). Petitioner, proceeding pro se, has paid the filing fee for his application. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be denied.

## STATEMENT OF THE CASE

**A.    Petitioner's Criminal History**

According to Respondent, the Director has lawful and valid custody of Petitioner pursuant to a judgment and sentence of the 299th District Court of Travis County, Texas, in cause number 9014218.  See Ex parte Miller, Appl. No. 63,030-01 at 13-17.  Petitioner was charged with burglary of a habitation.  Id. at 2.  Petitioner entered a plea of not guilty, but on February 27, 2002, the jury found him guilty, and the judge assessed punishment, based on enhancements, at thirty years imprisonment.  Id. at 13.  The Third Court of Appeals of Texas affirmed Petitioner's conviction on February 6, 2003.  Miller v. State, No. 03-02-00212-CR, 2003 WL 249852 (Tex. App.–Austin 2003).  On December 10, 2003, the Texas Court of Criminal Appeals refused Petitioner's petition for discretionary review.  Miller v. State, PDR 1137-03 (2003).

Petitioner also challenged his conviction in a state application for habeas corpus relief. Petitioner filed his state application on February 10, 2005.  Ex parte Miller, Appl. No. 63,030-01 at 31, 65.  On October 19, 2005, the Texas Court of Criminal Appeals denied Petitioner's application, without written order and on the trial court's findings.  Id. at original cover.  Thereafter, on October 28, 2005, Petitioner filed a Suggestion for Reconsideration, but this motion was denied on November 8, 2005.  Id. at cover.  Petitioner then executed his federal petition for writ of habeas corpus on October 28, 2005.

**B.    Factual Background**

The factual background of this case is found in the Court of Appeals opinion and is repeated below.

Carol Lindsey's home in Austin was burglarized on the evening of July 29, 2001.  She testified that she left her home at approximately 6:00 p.m. and returned about 10:00

2

p.m. and discovered that her home had been burglarized.  The property taken in the burglary included a Dell laptop computer, a mountain bicycle, two televisions, a jewelry box, and two cordless telephones.  She discovered that a window pane in her back door was broken and a previously locked door was pried open.  There were pry, scratch and gouge marks on the doors indicating forced entry.  After calling the police, she left and stayed the night at a friend's house.  Ms. Lindsey testified that she was a real estate agent and kept most of her business files on her computer.

Officer Raymond Lopez testified that about 12:20 a.m. on July 30, 2001, while on routine patrol, he saw a pickup truck containing two men and a woman parked along a poorly lighted street in a wooded area of Austin.  He saw one of the occupants throw something out the window, so he approached the vehicle to investigate.  The three occupants denied having identification.  Petitioner, a passenger, told the officer that the truck belonged to his girlfriend, Kathy Smith.  The officer noticed that the air bags in the vehicle had been deployed and repositioned and held in place with duct tape.  He checked and the vehicle was registered to a Robin Rostetter, but it had not been reported stolen.  He asked the occupants to produce documentation that the vehicle belonged to Kathy Smith, which they were unable to do.

At that point, Officer Lopez asked to search the vehicle.  The driver, Howard Hill, agreed to the search and neither the female passenger, Terrie Hanshew, nor Petitioner objected.  Officer Lopez frisked and handcuffed the three.  Petitioner was found to be carrying a large flat-tipped screwdriver.  Upon searching the vehicle, Officer Lopez found three or four screwdrivers, an ice pick, and several wire hangers that had been cut, hammered and flattened.  Behind the seat on the passenger's side, he found a Dell laptop computer, two cordless telephones, and two beepers.  Petitioner claimed that all of the items belonged to Kathy Smith.

Officer Lopez turned on the computer and opened its operating program.  In the "documents" file of the computer, he found various documents regarding Carol Lindsey, along with her home address.  The officer placed a telephone call to Carol Lindsey but was unable to reach her.  He released the three because he had no proof that the items were stolen.  However, he impounded the vehicle and other items until their ownership could be established.  Officer Lopez noticed that the three were not at all upset that he kept the property.  Later, Officer Lopez learned a burglary had been reported at the home address listed on the computer within two hours of his stopping appellant and his companions.   Arrest warrants issued for the three individuals.

On July 30, patrol officers spotted the three downtown in the 600 block of Brazos Street.  Officer Christopher Bealand testified that he arrested Petitioner, Hill, and Hanshew, and found hand tools on both Petitioner and Hill.  Petitioner had tin snips,

3

a screwdriver, and a crescent wrench.  Hill had pliers and a screwdriver in his back pocket.  They were also in possession of a white duffle bag containing a tool box.

Detective Joseph Lucas testified that he took the Dell laptop computer and the two cordless telephones, which were found in the pickup truck in which Petitioner was riding, to Carol Lindsey.  She identified the items as having been taken from her home in the burglary.

Hill testified on behalf of the State.  He said that he helped appellant burglarize Lindsey's house sometime between 4:00 p.m. and 6:00 p.m. on July 29, 2001.  He said that he drove a Mazda pickup truck, which he thought belonged to Petitioner's girlfriend, a woman named Kathy Smith.  Hill testified that the three drove around the Lamar/24th Street neighborhood and spotted the house in question.  Hill said that while he and his girlfriend, Hanshew, stayed in the pickup, Petitioner went to the back of the house. Hill then heard a loud pop sound like wood being scraped.  Three minutes later, Hill said, Petitioner came around the corner of the house riding a bicycle which he put in the back of the truck.  Hill testified that Petitioner then got into the truck and instructed him to back the pickup into the driveway.  Petitioner went back into the house and emerged again "with other stuff," which he loaded into the truck.  Some of the items, like a laptop computer and two telephones, Petitioner placed behind the seat on the passenger's side of the truck.  Hill testified that the three then sold the bicycle and television sets.  He admitted that he received a portion of the money from the sale of those items.

Hill admitted on cross-examination that he previously had committed felonies such as engaging in organized crime, several burglaries of a vehicle, theft, and possession of a controlled substance.  He conceded that he was testifying pursuant to a plea bargain agreement under which, in return for his testimony, he was given only a five-year sentence for the burglary offense instead of the twenty-five to ninety-nine years he was eligible for as a result of his previous felony convictions.  On redirect, Hill testified that he was not eager to give this testimony because he was concerned about having to "watch his back in prison."

The only defense witness was Robert Ciak, an alibi witness.  He testified that he was with Petitioner on July 29, 2001.  On direct examination, he testified that he was a good friend of Petitioner's and had known him two or three years.  On the day in question, he testified that he had gone to church at the Salvation Army, went home and changed clothes, ate breakfast and met up with Petitioner at approximately 10:15 a.m.  He said that Petitioner remained in his company throughout the day and evening.  Ciak said that the two rode the bus and went to Zilker Park and visited the oriental gardens for three or four hours.  Thereafter, he said they went bar-hopping on Sixth Street.  Ciak said that he left Petitioner's company at 9:48 p.m. because he had to be at a friend's house by ten o'clock.  He testified that Petitioner left in a small pickup

4

truck with Hill and a woman.  Ciak testified that Petitioner had been with him the entire day.

Ciak testified that he was unaware of Petitioner's past or the fact that Petitioner had been in prison.  Ciak said that as long as he had known him Petitioner had never done anything "bad" and that Petitioner was not "that kind of person."  At the time of the burglary in question, Ciak and Petitioner shared an apartment.  Ciak testified that when Petitioner did not come home for several days Ciak called the police department and learned that Petitioner was in jail for burglary.

Ciak was asked why he did not tell the police that he could vouch for Petitioner's whereabouts at the time of the burglary when he called them.  He said that it just did not occur to him to do that.  Although Petitioner was in jail in the meanwhile, Ciak said that he "figured [he would] wait till [Petitioner] comes to court so [Ciak could] talk to his attorney."  On cross-examination, Ciak admitted that he visited Petitioner in jail several times.  Ciak admitted that he was convicted of theft six different times, and that he had been in prison from 1995 to 1998.

Miller v. State, No. 03-02-00212-CR, 2003 WL 249852, *1-3 (Tex. App.–Austin 2003).

**C.     Petitioner's Grounds for Relief**

Petitioner raises the following grounds for relief:

1.     Petitioner was denied effective assistance of counsel, and

2.     The jury convicted Petitioner solely on the uncorroborated testimony of an accomplice witness.

**D.     Exhaustion of State Court Remedies**

Respondent does not contest that Petitioner has exhausted his state court remedies regarding the claims brought in this application.  A review of the state court records submitted by Respondent shows that Petitioner has properly raised these claims in previous state court proceedings.

## DISCUSSION AND ANALYSIS

**A.      The Antiterrorism and Effective Death Penalty Act of 1996**

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA"],[1] which radically altered the standard of review by this Court in federal habeas corpus proceedings filed by state prisoners pursuant to Title 28 U.S.C. § 2254.  Under the AEDPA's new standard of review, this Court cannot grant Petitioner federal habeas corpus relief in this cause in connection with any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, 28 U.S.C. § 2254(d)(1)-(2).

The "contrary to" requirement "refers to the holdings, as opposed to the dicta, of ... [the Supreme Court's] decisions as of the time of the relevant state-court decision." Dowthitt v. Johnson, 230 F.3d 733, 740 (5th Cir. 2000) (quoting (Terry) Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 1523 (2000)).   The inquiry into whether the decision was based on an "unreasonable determination of the facts" constrains a federal court in its habeas review due to the deference it must accord the state court.   See id.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by ... [the Supreme Court] on a question of law or if the state court decides a case differently than ... [the Supreme Court] has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court

---

[1] Pub.L. No. 104-132, 110 Stat. 1214 (1996).

identifies the correct governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Id. at 740-41.

Section 2254(d)(2) speaks to factual determinations made by the state courts. See 28 U.S.C. § 2254(e)(1). While we presume such determinations to be correct, the petitioner can rebut this presumption by clear and convincing evidence. See id. Absent an unreasonable determination in light of the record, we will give deference to the state court's fact findings. See id. § 2254(d)(2). With these principles in mind, this Court must now turn to the issues raised by the pleadings in this cause.

**B.      Ineffective Assistance of Counsel**

In his first claim for relief, Petitioner argues he was denied effective assistance of counsel. Specifically, Petitioner argues counsel failed to request a limiting instruction at the time of the admission of accomplice witness testimony. He also argues counsel failed to request a special charge on the defense theory of alibi. Finally, he argues counsel failed to contact and question a potential defense witness, Terrie Hanshew.[2] Petitioner raised these same issues in his state application for habeas corpus. The state courts rejected the merits of Petitioner's claims. As such, the AEDPA limits the scope of this Court's review to determining whether the adjudication of Petitioner's claims by the state court either (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

---

[2] Petitioner spells the witness's name as "Henshew." However, the state court records reflect the spelling as "Hanshew." For the sake of consistency, the Court will refer to this witness as Hanshew.

States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Ineffective assistance of counsel claims are analyzed under the well-settled standard set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant can make both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id. at 687, 104 S. Ct. at 2064. In deciding whether counsel's performance was deficient, the Court applies a standard of objective reasonableness, keeping in mind that judicial scrutiny of counsel's performance must be highly deferential. Id. at 686-689, 104 S. Ct. 2064-65. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S. Ct. at 2065. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (Citation omitted). Ultimately, the focus of inquiry must be on the fundamental fairness of the proceedings whose result is being challenged. Id. at 695-97, 104 S. Ct. at 2069. Accordingly, in order to prevail on a claim of ineffective assistance of counsel, a convicted defendant must show that (1) counsel's representation fell below an objective standard of

reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  Id. at 687, 104 S. Ct. at 2064.

With regard to Petitioner's first ground, that counsel failed to request a limiting instruction at the time of the admission of accomplice-witness testimony, counsel's affidavit indicates he did not request a limiting instruction because he did not feel it was necessary at the time.  Ex parte Miller, Appl. No. 63,030-01 at 75.  The state habeas court acknowledged counsel did not request a limiting instruction at the time the accomplice witness testified.  Id. at 76.  However, the state court noted the jury charge included an instruction on the accomplice-witness rule.  Id.  As such, the trial court concluded counsel rendered reasonably effective assistance of counsel.  Id. at 77.

Regardless of whether counsel was deficient for failing to request the limiting instruction during trial, Petitioner has not demonstrated a reasonable probability exists that the result of his proceeding would have been different if such an instruction had been provided.  Such a failure to request a limiting instruction likely had a negligible effect on the outcome of the trial, because the court's charge to the jury included written instructions about the accomplice-witness rule.  Ex parte Miller, Appl. No. 63,030-01 at 9.  Petitioner has failed to show the requisite prejudice, given this instruction.  Therefore, the trial court's determination that counsel provided effective assistance to Petitioner is not unreasonable.

With regard to Petitioner's second ground, that counsel failed to request a special charge on the defense theory of alibi, the record actually indicates counsel did request an alibi instruction, but the trial court denied the request.  Id. at 75.  Counsel's affidavit shows counsel did not object to the failure to give a separate instruction regarding the defense of alibi because Petitioner is not entitled to an alibi instruction "by right."  The Texas Court of Criminal Appeals has concluded that a criminal

9

defendant is not entitled to a jury instruction on the defensive issue of alibi. Geisberg v. State, 984 S.W.2d 245, 248 (Tex. Crim. App. 1998). The court reasoned that alibi is similar to other defensive issues which negate an element of the State's burden of proof, but do not warrant special jury instructions. Id. at 249. Because the court is not required to instruct the jury on the issue, counsel's failure to object to the denial of the instruction during Petitioner's trial does not constitute ineffective assistance of counsel. Moreover, even if counsel's failure to object was deficient, the jury still heard the full testimony of the alibi witness and chose to disregard that information when issuing the guilty verdict. Therefore, Petitioner has not demonstrated that counsel's failure to object to the denial of the alibi instruction prejudiced the Petitioner. Thus, the trial court's determination that counsel provided effective assistance in this regard was not unreasonable.

With regard to Petitioner's third ground, that counsel failed to contact and question potential defense witness Terrie Hanshew, counsel stated in his affidavit that he thoroughly and properly investigated all facts of the case, and that he either contacted or made an attempt to contact all relevant witnesses. Ex parte Miller, Appl. No. 63,030-01 at 75. On state habeas review, the trial court found counsel had thoroughly investigated the facts of the case, either contacted or attempted to contact all relevant witnesses, and obtained full discovery from the State. Id. at 76-77. The state court concluded counsel thereby rendered reasonably effective assistance of counsel. Id. at 77.

An attorney's failure to investigate the case against the defendant and to interview witnesses can support a finding of ineffective assistance. Bryant v. Scott, 28 F.3d 1411, 1435 (5th Cir. 1994). However, in order to establish that counsel was rendered ineffective by virtue of a failure to investigate the case against a defendant or to discover and present evidence, a convicted defendant must do more than merely allege a failure to investigate; he must state with specificity what the

10

investigation would have revealed, what evidence would have resulted from that investigation, and how such would have altered the outcome of the case.  See Anderson v. Collins, 18 F.3d 1208, 1221 (5th Cir. 1994); Nelson v. Hargett, 989 F.2d 847, 850 (5th Cir. 1993); United States v. Green, 882 F.2d 999, 1003 (5th Cir. 1989); Lockhart v. McCotter, 782 F.2d 1275, 1282-83 (5th Cir. 1986), cert. denied, 479 U.S. 1030, 107 S. Ct. 1360 (1987).

Petitioner contends Hanshew would have testified that Petitioner was not present when the burglary was committed by Hill.  He further contends she would have testified that Petitioner never indicated the truck in which they were riding belonged to a girlfriend named Kathy Smith.  Despite Petitioner's contentions, he fails to provide an affidavit from Hanshew confirming she would have testified as suggested by Petitioner.  The Fifth Circuit views claims of ineffective assistance with great caution where the only evidence of a missing witness' testimony is from the defendant.  Lockhart, 782 F.2d at 1282 (citing Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985)).

Having independently reviewed the entire state court record, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  Accordingly, the Court is of the opinion that 28 U.S.C. § 2254, as amended by the AEDPA, bars habeas corpus relief on Petitioner's claim that he received ineffective assistance of trial counsel.

**C.      Conviction Based Solely on Uncorroborated Accomplice Witness Testimony**

In his second claim for relief, Petitioner argues the jury convicted him based solely on the uncorroborated testimony of an accomplice witness.  Petitioner raised this same issue in his state application for habeas corpus relief.  In addition, Petitioner challenged the sufficiency of the evidence in his direct appeal.

It is well-settled that a federally-issued writ of habeas corpus reaches only convictions obtained in violation of some provision of the United States Constitution. Smith v. Phillips, 455 U.S. 209, 221, 102 S. Ct. 940, 948 (1982). A federal court may overturn a conviction resulting from a state trial where the State's action was not merely undesirable, erroneous, or even 'universally condemned,' but where the action actually violated the guarantees of the Fourteenth Amendment. Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400 (1973). The Fifth Circuit has held where the prosecution failed to satisfy the requirements of the accomplice-witness sufficiency rule, and the state court failed to enforce that purely state rule, there is no violation of the defendant's Fourteenth Amendment rights. Brown v. Collins, 937 F.2d 175, 182 n.12 (5th Cir. 1991). Accordingly, Petitioner's claim that his conviction was based solely on the testimony of an accomplice witness is not cognizable on this application for habeas corpus relief.

Alternatively, to the extent Petitioner presents a substantive claim of insufficient evidence, the federal habeas court must view the evidence in the light most favorable to the prosecution, and determine whether the evidence is sufficient to justify any rational trier of fact to find proof of guilt beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979). The evidence need not exclude every reasonable hypothesis of innocence or be completely inconsistent with every conclusion except guilt so long as a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt. United States v. Leahy, 82 F.3d 624, 633 (5th Cir. 1996).

Petitioner was charged with burglary of a habitation, the elements of which are as follows: (1) entering a habitation; (2) without the effective consent of the owner; and (3) with intent to commit felony theft. Miller v. State, No. 03-02-00212-CR, 2003 WL 249852, at *3 n.3 (citing Lopez v.

12

State, 884 S.W.2d 918, 920 (Tex. App.–Austin 1994, pet. ref'd.)).  The Third Court of Appeals directly addressed whether the evidence in Petitioner's case was sufficient.  As explained by the appellate court, there is compelling evidence of Petitioner's guilt, even apart from the accomplice-witness testimony.  Police caught Petitioner with items from the burglarized home in his possession and in possession of hand tools that were consistent with the method of entry into the home.  Id. at *3-4.  Based upon this evidence, this Court finds nothing unreasonable in the state court's application of clearly established federal law or in the state court's determination of facts in light of the evidence.  There was ample evidence in the record to establish Petitioner's guilt beyond a reasonable doubt even without the accomplice-witness testimony.  Accordingly, Petitioner's claim does not warrant federal habeas relief.

## RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be denied.

## OBJECTIONS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within ten (10) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

district court.  See 28 U.S.C. § 636(b)(1)(C);  Thomas v. Arn, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

The Clerk is directed to send a copy of this Report and Recommendation to the parties by certified mail, return receipt requested.

SIGNED this 1st day of June, 2006.

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE